**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **JAMAR OSBORNE AND** | § | |
| **MIKAL OSBORNE,** | § | |
| **Plaintiffs,** | § | |
| **v.** | § | **A-13-CV-528-LY** |
| | § | |
| **STATE OF TEXAS, TRAVIS COUNTY,** | § | |
| **BOARD OF LAW EXAMINERS,** | § | |
| **SUPREME COURT OF TEXAS, JULIA** | § | |
| **E. VAUGHAN, AND BUCK FILES,** | § | |
| **Defendants.** | § | |

## <u>ORDER</u>

Before the Court are Plaintiffs' Motion for Service by Marshall [sic] or Someone Specially Appointed (Dkt. No. 7) and Plaintiffs' Motion for Appointment of Counsel (Dkt. No. 8). The co-plaintiffs in this case, Jamar Osborne and Mikal Osborne, are brothers. The District Court referred the above-motions to the undersigned Magistrate Judge for a determination pursuant to 28 U.S.C. §636(b) and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

## I. MOTION FOR SERVICE BY MARSHAL

Plaintiff Jamar Osborne ("Jamar") alleges that he does not have the financial means to serve the named defendants in the instant suit. Dkt. No. 7. Jamar asserts that he had previously filed a motion for leave to proceed *in forma pauperis* along with a supporting financial affidavit and has had no income since filing the *in forma pauperis* motion. *Id.* On August 6, 2013, Judge Lee Yeakel entered an order, dismissing without prejudice Jamar's Motion for Leave to Proceed *in forma pauperis* because he had submitted the required $400.00 filing fee for this case. Dkt. No. 6.

After considering Jamar's instant request, the Court will DENY his Motion for Service. Other than Jamar's claim of indigency, he has presented no evidence suggesting that he is unable to serve the defendants in this case. Additionally, there is no pending motion to proceed *in forma pauperis* before this Court. The previous motion has already been resolved and Jamar has not submitted another motion for consideration. To the extent Jamar urges this Court to reconsider his Motion for Leave to Proceed *In Forma Pauperis* (Dkt. No. 5), the Court notes that the financial information contained therein is incomplete. Both Jamar and his co-plaintiff, Mikal Osborne, signed the original complaint. Dkt. No. 1. Yet the financial affidavit attached to Jamar's Motion for Leave to Proceed *In Forma Pauperis* only contains information regarding his financial situation. Dkt. No. 5. It provides no information regarding Mikal Osborne's financial status. Furthermore, as stated previously, the required filing fee in this suit was paid in full. As such, there is simply no information before this Court suggesting that Plaintiffs in this case are unable to serve their lawsuit upon the named defendants. Because the Osbornes' have not been found indigent, they are not entitled to effectuation of service by the U.S. Marshals or any other individual. Accordingly, the Motion for Service by U.S. Marshals or Appointed Individual (Dkt. No. 7) is **DENIED**.

## II. MOTION FOR APPOINTMENT OF COUNSEL

The decision to appoint an attorney is within the broad discretion of the trial judge given the particular facts of the case. *Gonzalez v. Carlin*, 907 F.2d 573, 579 (5th Cir. 1990). The following three factors are generally balanced by the courts in determining whether to appoint an attorney: (1) the party's financial ability to retain private counsel, (2) the party's own efforts to secure counsel, and (3) the merits of the case. *Id.* at 580; *Maxwell v. Kight*, 974 F. Supp. 899, 902 n.2 (E.D. Tex. 1996). Courts have also considered a party's ability under the circumstances of the case to present

the case without the assistance of an attorney. *Poindexter v. FBI*, 737 F.2d 1173, 1189 (D.C. Cir. 1984); *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982).

In considering a motion for appointment of counsel, the court must also remain mindful of the unfairness of imposing involuntary servitude upon a member of the bar when the likelihood of success upon the claims appears slight. *Tatum v. Cmty. Bank*, 866 F. Supp. 988, 995 (E.D. Tex. 1994). Moreover, there are no federal funds allocated to the prosecution or defense of civil lawsuits. For that reason, if the Court were to appoint an attorney, counsel would have to serve entirely without compensation unless the party prevails and attorney's fees are awarded. The court considers all of these factors in exercising its discretion is resolving a request for appointed counsel in a civil case.

### A.   Financial Ability to Retain Private Counsel

In demonstrating their financial ability to retain private counsel, Jamar Osborne and Mikal Osborne ("the Osbornes") are not required to establish substantial poverty. *Reado v. Tex. Gen. Land Office*, 929 F.Supp. 1046, 1053 (E.D. Tex. 1996) (citing *Ivey v. Bd. of Regents*, 673 F.2d 266, 269 (9th Cir. 1982)). "There need only be insufficient assets and income to enable movant to afford an attorney to investigate and file his claim." *Id.* As noted in Part I, it is unclear precisely what financial resources the Osbornes possess to pursue this lawsuit. The financial affidavit submitted by Jamar only purports to outline his financial situation. *See* Dkt. No. 5. The Court has no information regarding the financial status of Mikal Osborne ("Mikal"). Additionally, the filing fee has been paid in this case. Aside from Jamar's financial affidavit, the Court has no additional information regarding the circumstances that make retaining a private attorney financially difficult.

Furthermore, the Osbornes' have not presented any evidence of financial inability to retain private counsel under a contingency fee arrangement.  Accordingly, this factor does not weigh in their favor.

### B.  Efforts to Secure Counsel

To be eligible for appointed counsel, plaintiff must make "a reasonably diligent effort under the circumstances to obtain counsel." *Lee v. United States Postal Service*, 882 F. Supp. 589, 594 (E.D. Tex. 1995) (quoting *Bradshaw v. Zoological Soc'y*, 662 F.2d 1301, 1319 (9th Cir. 1981)). Courts have suggested that a significant inquiry on this issue is whether the complainant has pursued the possibility of a contingent fee arrangement in his efforts to locate an attorney. *Lee*, 882 F. Supp. at 594.  "If a plaintiff has made attempts to seek out a contingent fee arrangement, then there is a stronger argument for finding this factor to favor the appointment of counsel." *Reado*, 929 F.Supp. at 1052.

According to his motion, Jamar states that he has posted three advertisements on Craigslist soliciting legal services. Dkt. No. 8 at 1.  Jamar also notes that he has contacted several law firms, but has not received any response. *Id.*  Additionally, it appears that Jamar has contacted Texas Rio Grande Legal Aid, Inc., but was told he was ineligible for pro bono services as he is outside the service area of the organization and is not an immigrant farmer. *Id.*  Jamar also states that he has contacted the pro bono section of the local lawyer referral service but has not been able to speak to anyone. *Id.* at 2.  However, it does not appear that Mikal has spoken with any attorneys or made any effort to retain legal counsel for this case.  Consequently, the Court finds that, taken together, the Osbornes have not made a reasonably diligent effort to obtain counsel in this case.

### C.   Merits of the Case

The examination of the potential merits of the plaintiff's case is extremely important, "considering the unfairness of imposing service upon a member of the bar in a patently frivolous case." *Lee*, 882 F. Supp. at 594.  "Examination of the merits sua sponte before the defendant has been required to answer is akin to a frivolousness review of a general *in forma pauperis* proceeding." *Id.*  Frivolous suits are those without an arguable basis in law or fact.  *Id.*  Thus, the duty to screen for frivolousness includes a determination of whether the case is based on a recognized legal theory, and to make an initial assessment of the plaintiff's factual allegations in light of what plaintiff must eventually prove at trial.  *Id.*  While the court may not construct arguments or legal theories for the plaintiff, the complaint must be liberally construed when the plaintiff is proceeding *pro se*. *Id.*

Thus far, the Osbornes have presented little to support the majority of their claims in this case.  In his Complaint, Jamar alleges that he applied for admission to the Texas Bar in 2009 after graduating from the University of Oklahoma Law School.  Dkt. No. 1, ¶ 11.  However, he failed to attain the minimum passing score and was denied admission to the Texas Bar.  *Id.*  Jamar further states that he registered to take the Texas Bar again in February, 2013, but later decided not to proceed when an employment opportunity arose.  *Id.* ¶ 12.  The State Bar of Texas refused to refund his application fee or apply his fee to a future exam.  *Id.* ¶ 13.  Jamar also alleges that he applied for an attorney position with Travis County, but was denied employment because one of the job requirements was a license to practice law in Texas.  *Id.* ¶ 14.

In 2012, Mikal Osborne sought assistance from Jamar in a family law matter involving the custody of Mikal's daughter.  *Id.* ¶ 15.  However, Jamar was unable to assist his brother as he did not have a license to practice in Texas.  *Id.*  Consequently, Mikal hired another lawyer, resulting in

alleged substantial overcharges in legal fees, even though Mikal preferred to be represented by Jamar. *Id.* ¶ 16–17. The Osbornes assert that but for the requirements concerning the practice of law in Texas, Mikal would not have been denied his right to be represented by the individual of his choice and would not have been overcharged for legal services. *Id.* ¶ 17.

Construed broadly, Jamar does not appear to be alleging that he should be admitted to the State Bar of Texas. Rather, he complains that the regulations imposed by the State Bar of Texas and the Texas Bar Exam violate his and Mikal's constitutional and statutory rights. In particular, the Osbornes' instant complaint brings a multitude of claims, including due process, freedom of association, antitrust, regulatory taking, professional malpractice, civil rights, equal protection, first amendment, and improper taking of property. Dkt. No. 1. Several of the claims allege violations of Mikal's constitutional rights stemming from Jamar's inability to practice law in Texas without a law license, such as due process, freedom of association, and regulatory taking. Others merely allege that the state's control over who is admitted to the Texas Bar, or the Texas Bar Exam itself, violates statutory or constitutional laws, including the Osbornes' antitrust claim and Jamar's Title VII, equal protection, and first amendment claims. Jamar also asserts that the manner in which the Texas Bar Exam is graded is contrary to established legal principles and is a violation of his substantive due process rights. The remaining claims assert state law claims, such as negligence in failing to ensure access to legal services.

Whether applicants to a state bar are admitted is a matter for state regulation. *See Bailey v. Bd. of Law Exam'rs of State of Tex.*, 508 F.Supp. 106, 108 (W.D. Tex. 1980). "The only limitation upon the state's exclusive right to admit or deny admission to applicants must be based upon the Constitution." *Id.* Although a state may not exclude an individual from the practice of law for

reasons that violate the Due Process or Equal Protection clauses of the Fourteenth Amendment, "[a] [s]tate can require high standards of qualification, such as good moral character or proficiency in its law." *Schware v. Bd. of Bar Exam'rs of State of N.M.*, 353 U.S. 232, 239 (1957). Any qualification requirements "must have a rational connection with the applicant's fitness or capacity to practice law." *Id.*

The majority of the Osbornes' claims criticize the process of obtaining a law license in Texas, including the Texas Bar Exam. They assert that the exam is discriminatory and that it does not test a prospective applicant's ability to practice law. However, "[t]here is . . . no constitutional right to practice law without passing an examination." *Bailey*, 508 F.Supp. at 108 (citing *Attwell v. Nichols*, 608 F.2d 228, 230 (5th Cir. 1979)). As noted above, states can require high standards of qualification for individuals seeking to practice law, including a proficiency in its laws, and are only limited in their restrictions by the due process and equal protection clauses of the Fourteenth Amendment. *Schware*, 353 U.S. at 238–39. Furthermore, it is recognized that requiring candidates to pass the bar exam prior to admitting them to practice law is rationally related to the state's legitimate goal of assuring a competent bar. *Bailey*, 508 F.Supp. at 109. Therefore, unless the Osbornes' are able to demonstrate that the Texas Bar Exam infringes upon their due process or equal protection rights, the merits of the Osbornes' attacks upon the Texas Bar Exam as a requirement to practice law in Texas are weak and weigh against appointment of counsel in this case.

To state a claim of discrimination under the Equal Protection Clause, the Osbornes' "must either allege that (a) a state actor intentionally discriminated against him because of membership in a protected class or (b) he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Gibson v. Tex. Dep't of Ins.–Div.*

*Worker's Compensation*, 700 F.3d 227, 238 (5th Cir. 2012) (internal quotations and citations omitted). Here, Jamar does not allege that the Texas State Bar intentionally discriminated against him based on his membership in a protected class. Rather, he merely asserts that the Texas Bar Exam is an ineffective method to evaluate a candidate's knowledge of Texas law. Complaint ¶¶ 77–81. There is no allegation of intentional discrimination. Consequently, the Court finds that the Osbornes have not stated a claim for violation of the Equal Protection Clause.

Nor have the Osbornes' stated a due process claim. To state a claim for deprivation of due process, the Osbornes' must at least allege (1) the deprivation of a constitutionally protected interest and (2) constitutionally inadequate procedures. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 541 (1985). In this case, the Osbornes' have neither identified a deprivation of a constitutionally-protected right nor have they alleged any constitutionally inadequate procedures. First, as noted above, Jamar does not have a constitutional right to practice law without passing an examination. *Bailey*, 508 F.Supp. at 108 (citing *Attwell v. Nichols*, 608 F.2d 228, 230 (5th Cir. 1979)). Additionally, Mikal does not have a constitutional right to be represented by an individual who is not an attorney, even if that layperson is a family relative. *United States v. Cooper*, 493 F.2d 473, 474 (5th Cir. 1974) (per curiam). There is also no discernable claim in the Complaint that the Osbornes' were subjected to constitutionally-inadequate procedures. Therefore, the Osbornes' have failed to state a claim for deprivation of due process.

Related to his contentions against the Texas Bar Exam, Jamar also argues that there are multiple other methods for evaluating the effectiveness of a prospective attorney aside from the Texas Bar Exam. *See* Dkt. No. 1, ¶ 75. Yet "a state is not required to choose the least restrictive qualifications, but need only choose such restrictions as are rationally related to the state's goal of

ensuring a competent bar." *Bailey*, 508 F.Supp. at 109 (citing *Tyler v. Vickery*, 517 F.2d 1089 (5th Cir. 1975), *cert. denied*, 426 U.S. 940 (1976)). A bar examination tests the legal proficiency of bar examinees and is rationally related to the legitimate goal of maintaining a competent bar. *Bailey*, 508 F.Supp. at 109. As such, administering an exam is a valid method for determining admission to the Texas Bar and whether other methods exist for evaluating an individual's ability to practice law is irrelevant.

As to the Osbornes' antitrust claims, the Court also finds those assertions to lack merit. Jamar appears to assert that the Texas Bar violates the Sherman Act because it monopolizes the practice of law in Texas. Complaint ¶¶ 43–52. Yet, as noted above, it has already been recognized that states may regulate the practice of law in their jurisdictions, as long as those regulations do not contravene the due process or equal protection clauses of the Fourteenth Amendment. *Schware*, 353 U.S at 239. Furthermore, to the extent Jamar is challenging the requirement that applicants for the Texas Bar be required to pass the Texas Bar Exam prior to being admitted to practice law in Texas as anti-competitive conduct, his claim also fails. When the supreme court of a state promulgates rules governing the procedure for admission to the bar and retains sole authority over deciding which applicants are admitted, such action is not subject to Sherman Act liability under the state action doctrine of *Parker v. Brown*, 317 U.S. 341 (1943). *See Hoover v. Ronwin*, 466 U.S. 558, 573 (1984). In this case, the Texas Supreme Court issues rules governing admittance to the bar and also maintains sole authority over granting licenses to practice law in Texas. *See* Tex. Gov. Code §§ 82.021–82.022. Consequently, these actions are not subject to Sherman Act liability.[1]

---

[1] In his Complaint, Jamar cites to the Supreme Court's decision in *Goldfarb v. Va. State Bar*, 421 U.S. 773, 791 (1975), for the proposition that state bar associations are not exempt from antitrust laws. Complaint ¶ 50. However, *Goldfarb* is easily distinguishable from the instant case. In

Although the Court has not conducted an in-depth analysis of all of the Osbornes' claims, the Court's review thus far indicates that the merits of their claims are weak.  Consequently, the Court finds that this factor weighs against appointment of counsel in the instant case.

**D.      Plaintiff's Ability to Present His Case**

As this case is in the beginning stages, there is limited information to allow this Court to gauge the Osbornes' ability to present their case, but what the Court has seen is favorable.  Jamar possesses a law degree.  Moreover, the extensive complaint sets forth a myriad of constitutional and statutory claims.  Dkt. No. 1.  The complaint demonstrates that Jamar's legal training and writing skills are sufficient to pursue his claims in the instant case without the Court's appointment of counsel.  Accordingly, the Court finds that the Osborne's are capable of adequately presenting the instant case without the assistance of counsel.

**E.      Summary**

Considering the above factors, the Court finds that the Osbornes' have failed to demonstrate a genuine need for appointment of counsel at this time.  In particular, the Osbornes have not established that they are financially unable to retain an attorney nor that they have fully explored the possibility of retaining an attorney on a contingent fee basis.  Furthermore, the Court finds the merits

---

*Goldfarb*, the Supreme Court considered whether minimum fee schedules promulgated by the Fairfax County Bar Association and enforced by the Virginia State Bar violated the Sherman Act. *Goldfarb*, 421 U.S. at 775.  The Supreme Court ultimately held that by imposing disciplinary actions upon those who deviated from the published minimum fees, the Virginia State Bar had joined in private anti-competitive activity and could not claim Sherman Act immunity for the enforcement of minimum fee schedules. *Id.* at 791–92.  However, the activity considered in *Goldfarb* had little, if anything, to do with a state bar's regulation regarding the *admission* of lawyers.  Here, Jamar challenges the process of obtaining a license to practice law in Texas, which governs *who* may obtain a license to practice law in Texas.  In fact, the Supreme Court in *Goldfarb* explicitly recognized the compelling interest of a state to regulate its professions, including the legal profession. *Id.* at 792–93.  As such, Jamar Osborne's reliance upon *Goldfarb* is misplaced.

of the Osbornes' claims to be weak.  Therefore, the Court declines to appoint the Osbornes an attorney and **HEREBY DENIES** the Osbornes' Motion for Appointment of Counsel (Dkt. No. 8).

### III.  CONCLUSION

In accordance with the preceding analysis, the Court **HEREBY DENIES** Plaintiffs' Motion for Service by Marshall or Someone Specially Appointed (Dkt. No. 7) and Plaintiffs' Motion for Appointment of Counsel (Dkt. No. 8).

SIGNED this 7th day of October, 2013.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE